# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH WARKENTIN,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>FEDERATED LIFE INSURANCE COMPANY,<br><br>　　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No.  1:10-cv-00221-SAB<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 45-48, 57-59, 140, 141, 142, 143) |

On December 2, 2014, the Ninth Circuit remanded this case to this Court to address three issues. (ECF No. 121.) First, the Court was to address if the Court should exercise its discretion as to whether Plaintiff Keith Warkentin ("Plaintiff") established excusable neglect for his late-filed opposition. Second, if the first issue was answered in the negative, the Court was to address if it should exercise its discretion as to whether to deem Defendant Federated Life Insurance Company's proposed undisputed facts as admitted or take other action, such as allowing the entry of late-submitted factual material while providing Defendant with time to respond. Third, the Court was to decide whether Defendant is entitled to summary judgment on its rescission claim.

1

On April 15, 2015, the Court decided the first two issues and herein decides whether Defendant is entitled to summary judgment on the rescission claim.

## I.

## BACKGROUND

The operative complaint in this action is the first amended complaint filed on January 18, 2012. (ECF No. 39.) Plaintiff alleges that he purchased a disability insurance policy from Defendant on or around September 28, 2005. (First Am. Compl. ¶ 23, ECF No. 41.) Plaintiff began experiencing back pain and numbness in his left leg and foot around September 2007. (Id. at ¶ 5.) Plaintiff was placed on a modified work schedule in November 2007. (Id. at ¶ 6.) Plaintiff filed a claim with Defendant for disability benefits on or around December 31, 2007. (Id. at ¶ 8.) Defendant initially approved Plaintiff's claim on or around April 30, 2008. (Id. at ¶ 10.)

On or around February 12, 2009, Defendant ceased payments on Plaintiff's claim and notified Plaintiff that the claim was denied. (Id. at ¶ 28.) Plaintiff raises six causes of action against Defendant: 1) for breach of the insurance agreement; 2) for breach of the implied covenant of good faith and fair dealing; 3) for unfair business practices under California Business & Professions Code § 17200; 4) for unfair business practices under California Business & Professions Code § 17500; 5) for negligent misrepresentation; and 6) for fraud. On January 31, 2012, Defendant filed an answer and counterclaim against Plaintiff for rescission based on material misstatements and concealment made by Plaintiff in his initial policy application.

On February 14, 2012, Defendant filed a motion for summary judgment on its rescission claim. (ECF No. 45.) The hearing on the motion for summary judgment was set for March 23, 2012. Under Local Rule 230(c), Plaintiff's opposition to the motion was due on March 9, 2012. Plaintiff did not file a timely opposition, which Defendant noted in its March 16, 2012 reply. (ECF No. 56.) On March 22, 2012, Plaintiff filed an opposition, which stated that he was misinformed by a legal research website, "www.jurisearch.com" regarding the due date for his opposition. (ECF Nos. 57-59.)

The hearing on Defendant's motion for summary judgment took place on March 23,

1 2012. On March 28, 2012, the Court issued its written order granting summary judgment in favor of Defendant on all claims. (ECF No. 62.)

On December 2, 2014, the Ninth Circuit remanded this action as discussed above. (ECF No. 121.) On December 26, 2014, the mandate from the Ninth Circuit issued. (ECF No. 128.) On January 30, 2015, the parties filed briefing on the issues to be address based upon the remand order. (ECF Nos. 129, 130.) The parties filed oppositions to the briefing on February 13, 2015, and replies were filed on February 27, 2015. (ECF Nos. 131, 132, 133, 134.) A hearing was held on April 8, 2015 and the parties were ordered to provide supplemental briefing regarding the application of new case law. (ECF Nos. 138, 139.)

On April 15, 2015, Plaintiff filed his supplemental brief, and this Court issued an order finding that Plaintiff did not demonstrate excusable neglect for his failure to file a timely brief. (ECF No. 141.) However, the Court chose to exercise its discretion to consider the late filed opposition and Plaintiff was ordered to file a reply. (Id.) On April 22, 2015, Defendant filed a response to Plaintiff's supplemental briefing. (ECF No. 142.) On April 29, 2015, Defendant filed a reply to Plaintiff's opposition to the motion for summary judgment. (ECF No. 143.)

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment ... if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

## III.

## UNDISPUTED FACTS

1. Defendant issued the disability income insurance policy at issue in this case, Policy Number 656909 ("the Policy"), to Plaintiff.

2. The Policy states that "This policy, the application, the policy data page, and any attached riders, amendments, or endorsements make up the entire contract between you and us."

3. Plaintiff completed and signed Part 1 of the written application for the policy on or about June 14, 2005.

4. The application states: "Has the telephone interview and recommended preparation for the interview been explained to the proposed insured?" The 'YES" box for this question was marked with an "X" on Plaintiff's Application.

5. The Authorization, Acknowledgment and Acceptance of the application instructs the applicant to "PLEASE READ CAREFULLY. By your signature below, you represent that you have read, understand and agree with EACH of the following statements."

6. The Authorization, Acknowledgment and Acceptance of the application states: "I understand that Federated will rely on the information obtained in this application and to be obtained in Part 2 of the Application (the telephone interview) in deciding whether an insurance policy will be offered."

7. Part 2 of the Application sets forth the questions and responses of the telephone interview of Plaintiff, conducted on or about June 27, 2005.[1]

---

[1] Plaintiff argues in this opposition to the motion for summary judgment that it is disputed that there ever was a telephone interview, but the First Amended Complaint states:
   [Plaintiff] was never given a "Part two" (*medical history) questionnaire to fill out in the application process and was apparently orally asked paraphrased similar questions to those on Part two of the application. Plaintiff believed all his responses to Federated's agent/employee who

4

1     8.     Question number 2 of Section O Health Information, as shown on the

2 Application, Part 2: Page 2, states: "Have you seen any other doctors, chiropractors, specialists,

3 or therapists in the last 5 years including any medication, treatment or therapy?"

4     9.     The response to Question number 2 of Section O Health Information, as shown on

5 the Application is "No."[2]

---

wrote down Plaintiff's responses to the paraphrased questions were truthful.  One or more of the recordations by Federated's employee/agent who wrote down Warkentin's response to questions was an incorrect response.  Plaintiff failed to notice the incorrect response when he was delivered and accepted his policy #656909.

First Am. Compl. ¶ 2, ECF No. 39.)  Plaintiff's allegations in the complaint contradict the argument that no interview took place and Plaintiff has presented no evidence to show that he was not interviewed as set forth in the policy.  While Plaintiff submitted a copy of his deposition, it does not address an interview for Part II of the initial application.  Plaintiff's deposition transcript shows that he was questioned about delivery of the policy at issue here.  (Depo. Keith Ryan Warkentine 98-101, ECF No. 59-1.)  During questioning about the delivery of the policy, the transcript states:

   Q: So if [Mr. Thiesen] were to testify that he sat down and spent 25 to 30 minutes with you reviewing the these terms, including this document entitled "Part 2 of the application" that's typed out, that would be untrue, is that right?
   . . .
   A: I will state that when we sat down and went over these questions we were as you and I are now, across the table from each other, he asked a question, wrote down the answer.  I did not type any of this out, I never saw what he wrote.  He took it away from me, did not give me anything at the time, that I recall, and then later presented me with a – an approved policy.
   Q: Right.  And my question, though, is, I'm not asking about that interview process, which we'll talk about in a minute.
   But when he did come to you with these documents all prepared and sat down with you, he didn't go through and review these documents with you?
   A: Not that I recall.  He handed them to me and left.
   Q: After he handed them to you and left, did you have a chance to sit down and read them?
   A: I believe that I at some point in the future basically went over the answers but I did not go through the questions.
   Q: Okay.  So when you went through the answers, did you note anything at that time that you felt was written down incorrectly or not correct?
   A: Seemed reasonably, everything I saw.  I think that I probably had a question on something.  I don't recall at the moment, bit I don't recall a lot of that process because I saw him later.  But at the time of the delivery of the policy he handed it to me, said, "Sign here, your policy's been accepted.  You're good to go."
   Q: But after that period of time you had a chance to . . . .

Id. at 99:14-101:25.)  The deposition testimony submitted resumes with questioning on the second policy that is not at issue here.  Plaintiff testified that Mr. Medina went through Part II of the application and took the answers from the original application.  (Id. at 148:1-23.)  Plaintiff has presented no evidence to dispute that a telephone interview took place as stated in the policy.

[2] Plaintiff references the deposition regarding his interactions with Mr. Medina, arguing that Plaintiff testified that he did not authorize anyone to place an x on "no" on the application.  However, the deposition testimony does not dispute that Plaintiff responded "no" to question number 2 on the original application.  Plaintiff's dispute as to all Defendants undisputed facts relies on deposition testimony regarding the second policy and do not cause a dispute of fact as to the policy at issue in this instance.

10. The Acknowledgment of Acceptance, and Delivery of the Policy contained instructions to the applicant to "PLEASE READ CAREFULLY. Sign below ONLY after you have read, understand and agree to each of the following terms or conditions."

11. The Acknowledgment of Acceptance, and Delivery of the Policy included the statement that "I have read and understand PART 2 of the Application, and represent it to be true, accurate, current and complete to the best of my knowledge and belief: (a) as of the date of response; and (b) as of the date signed below[.]"

12. The Acknowledgment of Acceptance, and Delivery of the Policy included the statement, "I am not aware of any information, other than disclosed in the Application (Parts 1 and 2), which might affect the Company's willingness to make this offer[.]"

13. The Acknowledgment of Acceptance, and Delivery of the Policy included the statement that "I represent that there have been no changes in: (a) my health; or (b) the way I would respond to any question (if again asked on the date signed below)."

14. The Acknowledgment of Acceptance, and Delivery of the Policy included the statement "The Company may be able to challenge payment of a claim under the policy if a response to any question misrepresented the truth or was untrue[.]"

15. The Acknowledgment of Acceptance, and Delivery of the Policy included "The policy offered and issued includes: (a) the Application PARTS 1 AND 2, including this ACKNOWLEDGMENT OF ACCEPTANCE AND DELIVERY; and (b) the printed Policy, including PAGE 3 of the Policy[.]"

16. Plaintiff signed the Acknowledgment of Acceptance, and Delivery of the Policy on or about September 8, 2005.

17. The marketing representatives certification on the Acknowledgment of Acceptance, and Delivery of the Policy states "By signing below, I certify that in my presence, the insured, Owner and Applicant have: (1) reviewed PAGE 3 of the Policy, this ACKNOWLEDGMENT OF ACCEPTANCE AND DELIVERY and either the STATEMENT OF POLICY COST AND BENEFIT INFORMATION or the enclosed LIFE INSURANCE ILLUSTRATION; and (2) had an opportunity to ask questions and indicated that my answers

were satisfactory; (3) indicated to me that they understand this policy offer, I also certify that (4) I am not aware of any information contrary to that recorded in the Application, PARTS 1 and 2; (5) the parties have signed above; and (6) I have received any Premium Due on Delivery, as shown above."

18. Defendant's marketing representative signed the certification for the policy on or about September 8, 2005.[3]

19. Plaintiff underwent chiropractic treatment during the years 2000, 2001, 2002, 2003, 2004, and 2005.

20. Plaintiff's recorded response on the Application, to Part 2: Page 2; "Have you seen any other doctors, chiropractors, specialists, or therapists in the last 5 years including any medication, treatment or therapy?" is contrary to the testimony and medical records of Dr. Tru Chang.

21. Plaintiff did not disclose in his Application for the Policy that he had been treated by Dr. Tru Chang.

22. The Policy states that "We may not contest this policy after it has been in force for 2 years during your lifetime. This excludes any fraudulent misrepresentation in your application. . . ."

23. The Pre-existing Condition Limitation in the Policy states "We won't contest your policy or deny a claim for a disability caused by a disease or physical condition which you fully and accurately described in your application for coverage, unless the condition is excluded from coverage by name or specific description."

## IV.

## ANALYSIS

The Ninth Circuit has remanded this action to determine if Defendant is entitled to summary judgment on the rescission claim. In the April 15, 2015 order, it was decided that the universe of facts to be considered in deciding this motion is the record as it existed on the date of

---

[3] Plaintiff argues that there is no evidence that the signature on Part 2 of the application was Mr. Thiesen's and that the representations by Mr. Thiesen were true, however, Plaintiff presents no evidence to dispute this fact and during his deposition admitted that Mr. Thiesen delivered the policy.

7

the order granting summary judgment.  Therefore in deciding this motion, the Court considers the record as it existed on March 28, 2012, Defendant's reply, and the parties' briefing on the application of new law.

In the motion for summary judgment, Defendant argues that the deposition testimony of Dr. Chang and the medical records show that Plaintiff received chiropractic treatment approximately forty times in the five years prior to the effective date of the policy.  Defendant argues that based upon Plaintiff's failure to fully and accurately describe the extent of his chronic back pain and chiropractic treatment on his application, Defendant had the legal right to rescind the policy.  Plaintiff raises multiple arguments as to why Defendant cannot rescind the policy, including that Plaintiff's misrepresentations were not fraudulent, but were innocent or a negligent representation at worst.

**A.     Rescission**

Defendant argues that it is entitled to rescind the contract due to fraudulent misrepresentations in the contract and argues that misstatements and concealment of material facts, even unintentional, entitle the insurer to rescind the insurance policy.  The policy at issue here contained a clause that after two years, the policy can only be rescinded for fraudulent misrepresentations in the application. (ECF No. 41-1 at 8.)  Therefore, in order to rescind the policy, Defendant must show intent to defraud under California Civil Code section 1572.[4] (Memorandum 4-5, ECF No. 121.)

Section 1572 defines "actual fraud" as:

> any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
>
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or,

---

[4] As this is a diversity action, California law applies to the state law claims.  Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).

8

5. Any other act fitted to deceive.

Cal. Civ. Code § 1572. Therefore, the Court shall consider whether Plaintiff's statement was a fraudulent statement made with intent to deceive entitling Defendant to rescind the policy.

Rescission renders the policy void ab initio and it is as if the policy never existed. Amtel Corp. v. St. Paul Fire & Marine, 426 F.Supp.2d 1039, 1044 (N.D. Cal. 2005) (citing Cal. Ins. Code § 359 ("If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.")). Absent disputed facts, the court can determine whether Defendant is entitled to rescission under the terms of the policy at issue. Brodkin v. State Farm Fire & Cas. Co., 217 Cal. App. 3d 210, 216, 265 Cal. Rptr. 710 (Ct. App. 1989). ("The interpretation of an insurance policy presents a question of law when the underlying facts are undisputed.")

1. No genuine issue of material fact exists to dispute that Plaintiff's statement was a fraudulent misrepresentation made with intent to deceive

The issue to be addressed here is whether Defendant is entitled to rescind the policy due to the misrepresentations by Plaintiff in the application. It is well established under California law, "that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement." Guido v. Koopman, 1 Cal.App.4th 837, 843 (1991) (citations omitted). "The representations need not be made with knowledge of actual falsity but also include the 'false assertion of [a] fact by one who has no reasonable grounds for believing his own statements to be true, and when made with [the] intent to induce the other to alter his position, to his injury.' " Guido, 1 Cal.App.4th at 843 (citations omitted). California "case law has long held that negligent misrepresentation is included within the definition of fraud." Blankenheim v. E. F. Hutton & Co., 217 Cal.App.3d 1463, 1472-73 (1990); see Eck v. McMichael, 176 Cal.App.2d 368, 371 (1959) ("a positive misstatement of fact by one in a position to know the truth is in the eyes of the law a fraudulent misrepresentation").

The scienter for a fraudulent representation can be satisfied where "the maker knows that he or she does not have the basis stated or implied for the assertion." 1 Witkin, Summary 10th

1  (2005) Contracts , § 290, p. 318.  A false answer to any material matter of fact that is knowingly
2  and willfully made, with intent to deceive the insurer, is fraudulent.  <u>Cummings v. Fire Ins.
3  Exch.</u>, 202 Cal.App.3d 1407, 1416 (1988).

4  Defendant has submitted evidence that in Part 2 of his application for the policy, Plaintiff stated that in the five years prior to his application he had not seen a chiropractor.  (U.F. 8, 9.)  Defendant argues that Plaintiff's reply provides further evidence to support the claim that the misrepresentations in the Application were fraudulent.  After receiving his initial disability policy, Plaintiff applied for a second disability policy.  During his deposition Plaintiff testified that he talked to his Marketing Representative for that policy, Jesus Medina, and told him that the application stated he had not seen a chiropractor but that he had seen a chiropractor "periodically throughout."[5]  (Depo. of Keith Ryan Warkentin 148:25-149:8, ECF No. 59-1.)  Plaintiff testified that he told Mr. Medina that "I saw him for my shoulder and just periodically and for mostly my shoulder."  (<u>Id.</u> at 149:23-25.)  Plaintiff further stated that is was "just routine type stuff."  (<u>Id.</u> at 150:2.)

After Plaintiff submitted a claim and began receiving disability benefits, Defendant discovered that in the five years prior to completing the application, Plaintiff had seen a chiropractor approximately forty times.  (U.F. No. 48-1 at 24-34.)  Defendant contends that it is entitled to rescind the policy based on Plaintiff's fraudulent misrepresentations in his application.

Defendant has met it burden of identifying the evidence that supports the motion for summary judgment.  The burden therefore shifts to Plaintiff to submit evidence to establish that a genuine issue as to any material fact actually does exist.  For the reasons set forth below, Plaintiff's opposition to the motion to dismiss fails to meet his burden.  Plaintiff primarily argues that disputes regarding Defendant's evidence exist to create a triable issue of fact.  However, Plaintiff fails to raise any genuine issue as to any of the evidence submitted by Defendant.  Further, Plaintiff's evidence does not dispute any material issue in this action.

---

[5] In this testimony, Plaintiff also stated that Mr. Medina had not brought up the issue of chiropractors, but it is not Mr. Medina's interactions with Plaintiff that are at issue in this action.  The issue in this action is Plaintiff's responses to the first disability policy application.

### a. Plaintiff's misrepresentation falls within section 1572(3)

Plaintiff argues that the representations in Part 2 of the application cannot be construed as his representations because they were completed by a representative of the insurance company and he did not read the representations in the policy before signing it. The Court finds this argument to be without merit. See Pacific Ins. Co. v. Kent, 120 F.Supp.2d 1205, 1210 (C.D. Cal. 2000). Courts do not condone such willful ignorance and an insured is bound by the provisions of the document that he signed. Pacific Ins. Co., 120 F.2d at 1211 (citing Lunardi v. Great-West Life Assur. Co., 37 Cal.App.4th 807, 820 (1995)). Plaintiff signed the application and the application clearly stated that the information provided was "true, accurate, current and complete to the best of my knowledge and belief" as of the date signed. (U.F. 11.) Plaintiff adopted the representations in Part 2 of the application and verified their accuracy by signing the document.

In this instance, Plaintiff completed two applications for disability insurance policies. The initial application was handled by Defendant's Marketing Representative Jon Thiesen. Plaintiff submits his deposition testimony regarding the delivery of this policy in which he contends that Mr. Thiesen did not go over the policy with him, but merely dropped the policy off and left it with Plaintiff. However, this is not sufficient to create a triable issue of fact regarding the misrepresentation that was included in the policy.

Plaintiff argues, without submitting any evidence in support, that no telephonic interview was conducted for Part 2 of the Application. Review of Part 2 of the Application contradicts such argument. Part 2 of the Application includes detailed information regarding Plaintiff's employment and income. (ECF No. 41-1 at 20.) Part 2 of the Application also includes health information, including that Plaintiff has 2 drinks per year and in the personal physician section states: "He stated the last time he seen a Dr. [sic] was about 4 years ago & he had been bit by a dog & had to get a tetanus shot at the local Urgent Care." (Id. at 21.) Part 2 also includes Plaintiff's family history, including that his father was a smoker who died at age 64 from lung cancer and his mother had bypass surgery at around age 55. (Id. at 23.) Finally at his deposition, Plaintiff stated that he went through the answers to the questions in the policy delivered by Mr.

11

Thiesen, but did not review the questions. (Depo. of Keith Ryan Warkentin 100:7-101:22, ECF No. 59-1 at 2.)

Plaintiff states in his opposition that Defendant has presented no evidence that Part 2 of the application is an accurate representation of the telephone interview. However, the contract itself is such evidence. (See U.F. 11.) Plaintiff has not presented any evidence to cause a genuine issue of fact regarding the telephonic interview for the Application at issue here.[6]

In his initial application, Plaintiff stated that he had not seen "any other doctors, chiropractors, specialists, or therapists in the last 5 years including any medication, treatment or therapy." (U.F. 8, 9.) However, Defendant has submitted evidence that Plaintiff underwent chiropractic treatment from 2000 through 2005. (U.F. 19.) This is not a situation where there were only a few visits where Plaintiff could easily have been mistaken as to time. During the prior five years, Plaintiff had visited the chiropractor on approximately 40 occasions. (ECF No. 48-1 at 24-34.) Plaintiff's recorded interview occurred on June 27, 2005 (ECF No. 41-1 at 20), and Plaintiff's last chiropractic visit had been less than one year prior, on October 7, 2004. (Id. at 25.) At the time Plaintiff made the statement, he clearly knew that he did not have a basis to make the assertion that he had not seen a chiropractor or received therapy or treatment during the prior five years.

b. **Plaintiff has not created a genuine issue of material fact that there was no intent to deceive**

Since the statement falls within the fraudulent misrepresentation under section 1572, the Court considers whether there is a genuine issue as to the intent to deceive. "[T]he intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured willfully makes it with knowledge of its falsity." Cummings, 202 Cal.App.3d at 1418. Defendant contends that the misrepresentation was material to the issuance of the insurance policy. Plaintiff does not address the materiality of the statement in his opposition.

"Materiality is to be determined not by the event, but solely by the probable and

---

[6] Plaintiff submits deposition testimony regarding his interactions with Mr. Medina in the second disability policy application. The Court notes that Plaintiff is arguing his deposition testimony that related to the second application to create a genuine issue as to the first policy. The second application and Plaintiff's interactions with Mr. Medina do not create a genuine issue as to the substance of Plaintiff's answers in Part II of the initial application.

reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Cal. Ins. Code § 334. "The existence of actual fraud is always a question of fact." Guido, 1 Cal.App.4th at 843. "Justifiable reliance is an essential element of a claim for fraudulent misrepresentation, and the reasonableness of the reliance is ordinarily a question of fact." Id. Materiality and justifiable reliance can be decided as a matter of law where reasonable minds could not disagree as to the finding. Cummings, 202 Cal.App.3d at 1417 (materiality); Guido, 1 Cal.App.4th at 843 (justifiable reliance).

"[W]hile the questions contained on an insurance application are usually in themselves sufficient to establish materiality as a matter of law, there are situations in which materiality may be a question of fact." Atmel Corp. II, 416 F.Supp.2d at 811. "Ultimately, the 'critical question is the effect truthful answers would have had on [the insurer].' " Id. (quoting Sogomonian, 198 Cal.App.3d at 181). "[T]he trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed." Atmel Corp. II, 416 F.Supp.2d at 811 (citations omitted). "Claims of materiality can be attacked by showing the insurer failed to treat the alleged information as important when it first became aware of it." Id. (quoting Croskey et al., California Practice Guide: Insurance Litigation 5:227).

The policy in this instance states that Defendant will rely on the information in the application and information to be obtained during the telephone interview in deciding whether to offer the insurance policy. (U.F. 6.) Further, the policy provides that Defendant will not deny a claim for a disability beginning after 2 years from the policy date due to a disease or physical condition that existed before coverage began, unless the condition is excluded from coverage by name or specific description. (ECF No. 41-1 at 8.) The policy provided that Defendant would not contest the policy or deny a claim for disability caused by a physical condition with the applicant fully and accurately described in the application, unless the condition is excluded from coverage by name or specific description. (U.F. 23.)

A fact that is misrepresented or suppressed is deemed material if it relates to a matter of substance and directly affects the purpose of the party that was deceived into entering into the

1  contract. Thomas v. Hawkins, 96 Cal. App. 2d 377, 379 (1950). "The fact that the insurer has
2  demanded answers to specific questions in an application for insurance is in itself usually
3  sufficient to establish materiality as a matter of law." LA Sound USA, Inc. v. St. Paul Fire &
4  Marine Ins. Co., 156 Cal. App. 4th 1259, 1268 (2007) (citing Thompson v. Occidental Life Ins.
5  Co., 9 Cal.3d 904, 916 (1973)). While there may be some situations in which the answers to
6  questions on the application are not material misrepresentations for rescission, "the test for
7  materiality is whether the information would have caused the underwriter to reject the
8  application, charge a higher premium, or amend the policy terms, had the underwriter known the
9  true facts." Mitchell v. United Nat. Ins. Co., 127 Cal. App. 4th 457, 474-75 (2005).

10       Here, Plaintiff does not contest the materiality of the statement. Further, the application
11 provides that the applicant's answers to the questions will be relied upon to determine whether to
12 offer the insurance policy. The application provides that the insurer can exclude conditions from
13 coverage and the information that Plaintiff had been seeing a chiropractor for long term
14 treatment of back pain was material and he had an obligation to disclose the information. Cal.
15 Ins. Code § 332. The information which was requested was directly material to whether the
16 applicant had a condition that would justify exclusion under the policy. Where Plaintiff has an
17 extensive history of back problems that have required treatment over a period of years the
18 information could have caused the underwriter to reject the application, charge a higher
19 premium, or amend the policy terms, had the underwriter known the true facts. Mitchell, 127
20 Cal.App.4th at 475. The misrepresentation was material to the decision to issue the policy
21 without any exclusion for pre-existing conditions.

22       Further, Plaintiff's statement to Mr. Medina approximately one year later supports the
23 finding that the statement in the original application was made with intent to defraud. When
24 Plaintiff told Mr. Medina that he had seen a chiropractor, he stated that it was for "for my
25 shoulder and just periodically and for mostly my shoulder." (Depo. of Keith Ryan Warkentin at
26 149:23-25.) Plaintiff further stated that is was "just routine type stuff." (Id. at 150:2.) However,
27 review of Plaintiff's chiropractic medical records demonstrates that, while on occasion Plaintiff
28 had other complaints, Plaintiff received treatment primarily for his back pain. (ECF No. 48-1 at

14

24-34.)

Of the approximately forty chiropractor visits, Plaintiff's shoulder was addressed on five occasions, February 20, 2001; May 24, 2001; undated; November 4, 2002; and February 13, 2003. But his back was treated on all visits. Further, the record demonstrates that Plaintiff complained frequently about his back. (May 29, 2001 – "mid back twinge in still there, bothers patient a lot"; June 8, 2001 – "better overall but, mid back still have that painful spot"; August 17, 2001 - "back out again, [lower back pain (LBP)], [unintelligible] upper back pain"; September 12, 2001 – "LBP, upper back pain"; September 27, 2001 – "neck hurts, headache hurts, LBP hurts"; October 25, 2001 – "[patient] called in [with] severe LBP"; October 30, 2001 – "hurting but better" "difficulty standing up"; November 16, 2001 – "LBP still hurts but better"; undated – "mid to upper back pain, 2 – 3 weeks now"; July 22, 2002 – "[right] mid back and pain on [right] side of neck"; November 4, 2002 – [right] LBP"; February 13, 2003 – "same"; February 10, 2003 – "upper back pain [right more than left], [right] LBP"; February 13, 2003 – "better but it was starting to come back"; February 24, 2003 "better not as tight"; March 12, 2003 – "mid back pain"; April 23, 2003 – "headache 1 week now, back of neck to front; back hurts too [right] side not as sore"; October 29, 2003 – "LBP/neck pain, [right] side tension"; January 5, 2004 – LBP, 2-3 days"; January 12, 2004 – "little better but still sore"; February 3, 2004 –neck sore again/[headache] 1 week now"; February 4, 2004 – LBP better (neck out last night)"; August 9, 2004 – "been bad, LBP, headache, neck pain, right side ? trunk pain not as bad"; August 23, 2004 – "LB was sore and then very painful last night"; October 7, 2004 – "pretty good, LB feels better, upper back and neck".) Clearly based upon the medical records, Plaintiff was not seen "mostly for his shoulder" nor were his visits for "routine type stuff."

Plaintiff has not met his burden of showing that a genuine issue of material fact exists as to whether at the time Plaintiff made the statement in his application, it was not a knowing and willful misrepresentation with intent to deceive. Cummings, 202 Cal.App.3d at 1416.

    **c.**    **Defendant is entitled to rescind the contract based on Plaintiff's material fraudulent misrepresentation**

The application provides that Defendant will rely on the information in the application

1  and information to be obtained during the telephone interview in deciding whether to offer the
2  insurance policy.  (U.F. 6.)  "[A]n insurer has the right to rely on the insured's answers to
3  questions in the insurance application without verifying their accuracy."  LA Sound USA, Inc.,
4  156 Cal. App. 4th at 1271.

5       Plaintiff has failed to meet his burden of demonstrated that a genuine issue of material
6  facts exists regarding the misrepresentations in the application.  In his application for the
7  disability policy, Plaintiff made material fraudulent misrepresentations in the application and has
8  not produced any evidence to create a genuine issue of material fact that he did not have the
9  intent to defraud.  Defendant is entitled to rescind the disability policy.  Defendant is granted
10 summary judgment on the issue of rescission.

11     2.    <u>California Insurance Code Section 650 does not preclude rescission of the policy</u>

12      Plaintiff argues that section 650 precludes Defendant from rescinding the policy since he
13 filed this action first.  While Plaintiff is correct that California Insurance Code Section 650
14 precludes a party from unilaterally rescinding a policy after the insured files suit, it does not bar
15 an insurer's action for rescission.  <u>Resure, Inc. v. Superior Court</u>, 42 Cal.App.4th 156, 160
16 (1996).  "[T]he insurer may raise 'the same issues' by asserting rescission as an affirmative
17 defense and counterclaim."  <u>Atmel Corp. v. St. Paul Fire & Marine Ins. Co. ("Atmel Corp. II"</u>,
18 416 F. Supp. 2d 802, 805 (N.D. Cal. 2006).  Since Defendant seeks rescission by way of an
19 answer and cross-complaint section 650 does not bar rescission of the policy.  <u>LA Sound USA,
20 Inc.</u>, 156 Cal.App.4th at 1268.

21     3.    <u>Defendant's rescission claim is not barred by the statute of limitations</u>

22      Plaintiff argues that Defendant cannot file a rescission claim because it knew in 2006
23 when he told Mr. Medina that he had seen a chiropractor of the misstatement in the initial
24 application.

25      Plaintiff argues that pursuant to California Code of Civil Procedure section 337 and
26 California Insurance Code section 359, the statute of limitations begins to run on the date the
27 representation becomes false. It is Plaintiff's position that the representation was false on June
28 27, 2005 when the statement was made or on September 8, 2005 when the contract was

1 complete.  Plaintiff contends that the statute of limitations ran in 2009; and since Defendant did
2 not bring the counter claim until January 31, 2012 it was beyond the statutory time.  However,
3 the statute of limitations on a claim for fraud in contract is four years from the date that the party
4 discovers the fraud.  Cal. Code. Civ. Pro. § 337.  Plaintiff has presented no evidence that
5 Defendant was aware of the fraudulent misrepresentation prior to issuing the policy at issue in
6 this action.

7 While Plaintiff argues that he informed Mr. Medina that he had seen a chiropractor in
8 2006, his representation of the condition for which he was treated and the treatment he received
9 were also misrepresentations as discussed above.  The statutory time begins to run from the time
10 which the party is aware of facts from which the party suspects or should suspect the wrong.
11 Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1113 (1988).

12 Plaintiff told Mr. Medina that he had seen a chiropractor for his "shoulder and just
13 periodically and for mostly my shoulder."  (Depo. of Keith Ryan Warkentin at 149:23-25.)
14 Plaintiff further stated that is was "just routine type stuff."  (Id. at 150:2.)  Viewing the evidence
15 in the light most favorable to Plaintiff, he misrepresented his chiropractic treatment in his
16 conversation with Mr. Medina.  Defendant had the right to rely on Plaintiff's answers to
17 questions in the insurance application without verifying their accuracy.  LA Sound USA, Inc.,
18 156 Cal. App. 4th at 1271.  Therefore, Defendant was not reasonably put on notice of the need to
19 inquire into the fraudulent statements.

20 Defendant presents evidence that the first it was aware of Plaintiff's misrepresentation of
21 the treatment for his back was in December 13, 2011 during the deposition of Dr. Chang.  (ECF
22 No. 48-1.)  Plaintiff has presented no evidence to dispute that Defendant did not discover the
23 fraudulent misstatement at a time which would bar the counter claim in this action.

24 Further, under California law, "a defense may be raised at any time, even if the matter
25 alleged would be barred by a statute of limitations if asserted as the basis for affirmative relief."
26 Styne v. Stevens, 26 Cal. 4th 42, 51, 26 P.3d 343 (2001).  This applies to contract actions where
27 a party sued on a contract can assert a defense that makes the contract unenforceable.  Id.  Where
28 the result of the defense asserted is to render the contract unenforceable, it is a defense to which

the statute of limitations does not apply. Id. at 54. Similarly, where the party asserts a counter claim seeking rescission and is not seeking any relief other than a declaration of the contract's invalidity, it is considered a defense to which the statute of limitations is not applicable. Pringle v. Water Quality Ins. Syndicate, 646 F.Supp.2d 1161, 1172 (C.D. Cal. 2009).

The statute of limitations does not bar Defendant from asserting a counter claim for rescission in this action.

### 4. Laches does not preclude Defendant from rescinding the policy

Plaintiff also argues that since Plaintiff informed Mr. Medina that he had seen a chiropractor around October 2006, Defendant is precluded by the doctrine of laches from rescinding the policy. The doctrine of laches would bar an insurer's right to rescind a policy if the insurer failed to act with reasonable promptness after discovering the grounds for rescission and if the delay results in substantial prejudice. Jaunich v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 647 F. Supp. 209, 216 (N.D. Cal. 1986); see Cal. Civ. Code § 1693 ("When relief based upon rescission is claimed in an action or proceeding, such relief shall not be denied because of delay in giving notice of rescission unless such delay has been substantially prejudicial to the other party.").

While Plaintiff argues that Defendant waited seven years after discovering the fraudulent misrepresentations to rescind the policy, the Court finds Plaintiff has presented no evidence that Defendant was aware of the fraudulent misstatements prior to this action being filed. Further, Plaintiff has presented no evidence, nor has Plaintiff argued, that he would suffer from substantial prejudice by any delay here.

The doctrine of laches does not preclude Defendant from rescinding the policy.

### 5. Application of New Case Law

Plaintiff brings to the Court's attention DuBeck v. California Physicians' Service, 234 Cal.App.4th 1254 (2015) arguing that this Court should deny Defendant's motion for summary judgment as the facts in the actions are similar. While DuBeck did find that the insurance company's actions were inconsistent with the right to rescind, the issue addressed was whether the insurance company had waived the right to rescind. Id. at 1263. In DuBeck the issue of

waiver was raised in the papers opposing the motion for summary judgment and the lower court failed to address it. Id. DuBeck was specifically addressing whether the insurance company had waived its right to rescind the contract. Id. at 1265. Since Plaintiff did not raise waiver in the opposition to Defendant's motion to dismiss, the Court does not find this case to be applicable here. Plaintiff may not raise an argument not presented in his opposition for the first time in a brief addressing new case law.

Further, to the extent that Plaintiff seeks to introduce evidence outside the universe of facts found to be properly before the Court on this motion for summary judgment, the Court finds this to be improper. The parties agreed at the April 28, 2015 hearing that the Court was to consider the record as it existed on the date that the motion for summary judgment was decided. Further, the Court found that Plaintiff had not shown good cause to file a supplemental or new opposition to the motion for summary judgment. Accordingly, those facts which Plaintiff argues in attempting to show that this action and DuBeck are similar are not being considered in this motion.

### 6. Defendant is entitled to declaratory relief

Defendant seeks a declaration that disability income policy number 656909 is void ab initio; and Defendant is entitled to rescind disability insurance policy number 656909 due to Plaintiff's concealment and fraudulent misrepresentations pursuant to the terms of the policy.

Where a policy is rescinded it is as if it never existed. Amtel Corp., 426 F.Supp.2d at 1044. "Rescission effectively renders the policy totally unenforceable from the outset, so that there never was any coverage, and therefore no benefits are payable." Atmel Corp, 426 F. Supp. 2d at 1044 (quoting Imperial Cas. & Indem. Co. v. Sogomonian, 198 Cal.App.3d 169, 182 (1988)). Given this Court's finding that Defendant is entitled to rescind the policy, Defendant's request for declaratory relief is granted.

## V.

## CONCLUSION AND ORDER

The policy at issue here provided that Defendant was entitled to rescind the policy for any fraudulent misrepresentation in the application. The Court finds that Plaintiff has not met his

burden of submitting evidence to create a genuine issue of material fact on whether his application contained fraudulent misrepresentations with an intent to defraud. Therefore, Defendant is entitled to summary judgment on the rescission counter claim.

     Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment, filed February 14, 2012, is GRANTED; and

2. The Clerk of the Court is directed to enter judgment in favor of Defendant Federated Life Insurance Co. and against Plaintiff Warkentin.

IT IS SO ORDERED.

Dated: **May 15, 2015**

UNITED STATES MAGISTRATE JUDGE